| | | |
|---|---|---|
| **CLIFF JENNINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:09-CV-72** |
| | ) | |
| | ) | **(Phillips)** |
| **CITY OF LAFOLLETTE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 11]. The plaintiff, Mr. Cliff Jennings, previously served as the Mayor of the City of LaFollette, Tennessee (the "City"). Plaintiff was removed from office in November 2008, after losing in the general election. On January 6, 2009, the City Council and newly-elected mayor, Mike Stanfield, held a meeting to review Plaintiff's request for health insurance benefits. During the meeting, the City Council and Mayor Stanfield decided that Plaintiff was not entitled to health insurance benefits after leaving office.[1]

On February 5, 2009, Plaintiff filed suit against the City in the Circuit Court for Campbell County, Tennessee. Plaintiff argues that he was unlawfully denied health insurance benefits after leaving office. Plaintiff has filed various state law claims, including breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff has also filed two civil rights claims under 42 U.S.C. § 1983. First, Plaintiff alleges that he was deprived of a constitutionally protected

---

[1] This case is not about whether Plaintiff is entitled to retirement benefits under the Tennessee Consolidated Retirement System, or whether Plaintiff is entitled to COBRA benefits.

property interest–that is, an entitlement to receiving health insurance benefits from the City after leaving office–without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment. Second, Plaintiff alleges that the City rescinded the Benefits in violation of the First Amendment. [Id.]. In particular, Plaintiff alleges that the City rescinded the Benefits based upon his political speech and association.

The following issues are before the Court. First, as for the procedural due process claim, does Plaintiff have a constitutionally protected property interest in receiving health insurance benefits after leaving office? If so, is there a genuine issue of material fact regarding whether he was afforded due process before the benefits were rescinded? Second, did Plaintiff engage in protected speech? If so, is there a genuine issue of material fact regarding whether the City's decision to rescind the health insurance benefits was substantially motivated by Plaintiff's protected speech?

For the following reasons, Defendant's Motion for Summary Judgement [Doc. 11] is **GRANTED**, whereby Plaintiff's federal claims are **DISMISSED WITH PREJUDICE** and his state law claims are **DISMISSED WITHOUT PREJUDICE**. First, the Court finds that Plaintiff does not have a constitutionally protected property interest in receiving health insurance benefits after leaving office. Second, Plaintiff has failed to show that he engaged in protected speech. Third, having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## I.    BACKGROUND

As an initial matter, the Court notes that it has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and that the complaint was properly removed pursuant to 28 U.S.C. § 1441. The following facts are not disputed.

The City of LaFollette, which is a municipal corporation organized under the laws of the State of Tennessee[2], is "governed under what is commonly called the 'Council Administrator' form of government." [City of LaFollette Employee Handbook and Personnel Handbook, hereafter referred to as the "Handbook," Doc. 12, Pg. 38]. The City Council consists of four at-large members who are elected for staggered terms. [Id.] *See also* City of LaFollette Charter, Doc. 12, Pg. 8, Article I, § 2. The mayor serves a four-year term, and works with the City Council to "establish policy and enact ordinances and resolutions for the development of the entire community." [Handbook, Doc. 12, Pg. 38].

In November 2008, Plaintiff lost his bid for reelection as the Mayor of LaFollette. [Plaintiff's Complaint, Doc. 1, Pg. 6, ¶ 1]. Plaintiff alleges that despite leaving office, he was entitled to receive health insurance benefits (the "Benefits") until he was eligible for Medicare. [Id.]. On January 6, 2009, the City Council and Mayor Stanfield held a meeting to review Plaintiff's request. [Id. ¶ 2]. During the meeting, the City Council–by motion–denied Plaintiff's request. [Id.].

Plaintiff argues that he is entitled to the Benefits based upon: (1) the City of LaFollette Employee Handbook and Personnel Handbook (the "Handbook"); (2) a resolution adopted by the City Council that temporarily amended the Handbook ("Resolution 2008-13"); and (3) the "past practice" of city employees, including himself, who received health insurance benefits after leaving office. [Plaintiff's Complaint, Doc. 1, Pg. 6, ¶ 1.]. Plaintiff does not rely upon statutory authority to support his claim.[3]

---

[2] *See* City of LaFollette Charter, Doc. 12, Pg. 1.

[3] The City of Lafollette Charter, enacted under Chapter 46 of the Private Acts of 2003, does not provide health insurance benefits to former mayors. [*See* City of LaFollette Charter, Doc. 12, Pgs. 13-15]. The Charter provides the major with a salary (twice that of each Councilman), but does not provide for health insurance benefits upon leaving office. [Id.]. Plaintiff has not provided any statutory authority to support his alleged entitlement.

On September 27, 2001 the City adopted the Handbook by passing Ordinance No. ORD-2001-6.  [Handbook, Doc.12, Pg. 9, § VII, ¶ C].  The Handbook states that it is not a contract[4], but a policy manual.  [*See, e.g*., Introductory Statement to Handbook by Mayor Cliff Jennings, Doc. 12, Pg. 36].  Plaintiff, while serving as mayor, stated that the Handbook was "designed to describe some of the expectations of our employees and to outline the policies, programs, and benefits available to employees."  [Id.].

While the Handbook applies to most City employees, it does not apply to certain individuals.  Section I, Paragraph C of the Handbook (titled "General Provisions") states that "these rules and regulations [the Handbook] shall cover all employees in the City of LaFollette service, *unless specifically exempted by this document*, the City Charter and/or the Ordinances of the City of LaFollette . . ."  [Handbook, Doc. 12, Pg. 46, § I, ¶ C] [emphasis added].  The Handbook exempts the following persons:

1.  *All elected officials*

2.  Members of the appointed boards and committees

3.  Consultants, advisors and legal counsel rendering temporary professional service

4.  City attorney

---

[4] The Handbook repeatedly states that it is not a contract.  For example, one of the first pages of the Handbook–the "Employee Acknowledgment Form"–states that "this handbook is neither a contract of employment nor a legal document."  [Employee Acknowledgment Form of Handbook, Doc. 12, Pg. 39].  In a later provision, the Handbook states the following: "These personnel regulations are for information only.  This is not an employment contract.  This document is a statement of current policies, practices, and procedures.  Nothing in this document is to be interpreted as giving employees any more property rights in their jobs than may already be given by the City of LaFollette Charter.  These personnel policies, rules, and regulations shall be reviewed periodically.  The employer reserves the right to change any or all such policies, practices, and procedures in whole or in part at any time, with or without notice to employees."  [Handbook, Doc. 12, Pg. 99, § VIII, ¶ C].

5. Independent contractors

6. Volunteer personnel appointed without compensation

7. City Judge

[Id.] [emphasis added]. Furthermore, the "Definitions" section of the Handbook defines "exempt service" as the following:

> The *elected positions of Mayor*, council members, and those individuals who serve at the pleasure of the elected officials who appointed them to their positions; board and commission members; people employed as consultants or counsel rendering temporary professional services; and positions involving seasonal, temporary, emergency, or voluntary employment or appointments to whom the rules and regulations are not applicable.

[Id., Pg. 102, § IX] [emphasis added]. By its clear terms, the Handbook does not apply to Plaintiff.

Among other things, the Handbook provides health insurance benefits to retiring employees until they are eligible for Medicare. [Id., Pg. 69, § V, ¶ Q]. On August 5, 2008, the City Council adopted Resolution 2008-13, titled "Resolution to Temporarily Lower the Age of Retirement for Employees of the City of LaFollette Who Are Eligible Through the Tennessee Consolidated Retirement System." [Resolution 2008-13, Doc. 12, Pg. 122]. The Resolution temporarily amended the Handbook (for ninety days) by lowering the age requirements (from 60 to 57) for receiving health insurance benefits upon retirement. As amended, Section V, Paragraph Q of the Handbook ("Retirement Health Plan") stated:

> Employees who retire under the Tennessee Consolidated Retirement Plan [TCRS] with twenty (20) years service and who are 60 years of age at retirement or employees with thirty (30) years of service under TCRS and who are 60 years of age may elect at the time of retirement to continue the City's health care plan until they are eligible for Medicare.
>
> There will be a temporary exception that will allow the 60 years of

age requirement to be lowered to 57 years of age for a 90 day period after passage of this resolution. Eligible employees must notify the City Administrator in writing within 30 days of passage of this resolution so that the last day of employment will be no later than November 5, 2008.

After this 90 day period this amendment will become null and void.

[Id.]. Plaintiff argues that he qualified under the Resolution because he retired under the Tennessee Consolidated Retirement Plan with at least twenty years of service. [Plaintiff's Complaint, Doc. 1, Pg. 7, ¶ 2]. In response, the City argues that the Resolution did not create a protected property interest because: (1) Resolution 2008-13 amended the Handbook; and (2) the Handbook does not apply to Plaintiff.

On November 5, 2008, after losing his bid for reelection, Plaintiff sent a letter to David Young, City Administrator for the City of LaFollette. [Plaintiff's Letter to Mr. Young on November 5, 2008, Doc. 12, Pg. 123]. In that letter, Plaintiff stated that he wanted to receive health insurance benefits pursuant to Resolution 2008-13. [Id.]. While the record is not clear, it appears that Plaintiff received health insurance benefits from BlueCross Blue Shield of Tennessee during December 2008.[5] [Minutes for City Council Meeting on January 6, 2009, Doc. 12, Pg. 127]. One month later, the City Council and Mayor Stanfield decided during a meeting that Plaintiff was not entitled to health insurance benefits after leaving office. [Id.]. In particular, the City Council decided that because the Handbook did not apply to Plaintiff, Resolution 2008-13–which amended the Handbook–did not affect Plaintiff's rights. [Id.]. Plaintiff was present during the meeting, but did not speak. [Id., Pg. 125].

---

[5] The minutes for the City Council meeting on January 6, 2009 (in which the City Council voted to rescind health insurance benefits to Plaintiff) states that Plaintiff received health insurance benefits during December 2008. [Minutes for City Council Meeting on January 6, 2009, Doc. 12, Pg. 127].

On February 5, 2009, Plaintiff brought suit against the City in the Circuit Court for Campbell County, Tennessee. [City's Notice of Removal, Doc. 1, Pg. 1]. Plaintiff argues that the City unlawfully rescinded the Benefits. On February 25, 2009, the City removed the case to federal court. [Id.]. On June 25, 2010, the City moved for summary judgment on Plaintiff's claims. [Doc. 11]. On August 6, 2010, Plaintiff responded in opposition. [Doc. 22]. On August 27, 2010, the City replied. [Doc. 31]. This matter is now ripe for review.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see also, e.g.* Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of

genuine issues of material fact.  <u>Id.</u> at 324.  If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

III.   **ANALYSIS**

    A.    **Plaintiff's Civil Rights Actions Under 42 U.S.C. § 1983**

        1.    **Defining the Parties: Plaintiff Has Sued a Municipality**

To state a claim under 42 U.S.C. § 1983, Plaintiff must show "(1) that [the] defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law."  <u>Mezibov v. Allen</u>, 411 F.3d 712, 716 (6th Cir. 2005).  Plaintiff has filed two § 1983 claims.  First, Plaintiff alleges that he was deprived of a constitutionally protected property interest–that is, health insurance benefits after leaving office in November 2008–without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment.  Second, Plaintiff alleges that the City violated his First Amendment rights to freedom of speech and association.

Courts must always begin their analysis by asking: who did the plaintiff sue, and in what capacity?  This is an important question because it determines what the plaintiff must prove, and what defenses are available.  In the present case, Plaintiff has sued the City of LaFollette, a municipality.  In <u>Monell v. Dep't of Soc. Servs.</u>, the Supreme Court held that municipalities may be sued under Section 1983.  436 U.S. 658, 694 (1978).  To hold a municipal liable, the injury must result  from "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  <u>Id</u>.  As the Court of Appeals for the Sixth Circuit has stated, "[a] municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory."  <u>Powers v. Hamilton Cnty. Pub. Defender Comm'n</u>, 501 F.3d 592, 607 (6ᵗʰ Cir. 2007) (emphasis not added) (citing <u>Monell</u>,

436 U.S. at 691). Rather, liability will attach "only where the plaintiff establishes that the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." Powers, 501 F.3d at 607 (citing Monnell, 436 U.S. at 694). *See also* Doe v. Claiborne Cnty., 103 F.3d 495, 507 (6th Cir. 1996) ("Under Monnell, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . [that] leads to, causes, or results in the deprivation of a constitutionally protected right."). The Monnell Court described a municipal policy as "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . ." Monnell, 436 U.S. at 690. Recently, the Supreme Court clarified the holding of Monnell, stating that the "policy" or "custom" requirement applies when a plaintiff seeks monetary damages *or* injunctive relief against a municipality. L.A. Cnty. v. Humphries, ---S.Ct---, 2010 WL 4823681, at *7 (Nov. 30, 2010) (recognizing that "Monell's 'policy or custom' requirement applies in § 1983 cases irrespective of whether the releif sought is monetary or prospective"). In the present case, Plaintiff seeks both monetary damages and injunctive relief. Accordingly, Plaintiff must demonstrate that his alleged injury was caused by a municipal policy or custom. Id.

In the present case, Plaintiff's § 1983 claims are based upon official action taken by the City Council and Mayor: the City's lawmakers. [*See* Handbook, Doc. 12, Pg. 38]. *See also* Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) ("With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body–whether or not that body had taken similar action in the past or intended to do so in the future–because even a single decision by

such body unquestionably constitutes an act of official government policy.") (citations omitted); Owen v. City of Independence, 445 U.S. 622 (1982) (recognizing that the city could be held liable when the city council passed a resolution firing plaintiff without a pretermination hearing). On January 6, 2009, the City Council and Mayor Stanfield held a meeting where they decided, among other things, that Plaintiff was not entitled to health insurance benefits after leaving office. [Minutes for City Council Meeting on January 6, 2009, Doc. 12, Pg. 127]. In particular, the City Council and Mayor Stanfield decided that the Handbook did not apply to Plaintiff, and therefore Resolution 2008-13–which amended the Handbook–did not affect Plaintiff's rights. [Id.]. Because the City Council and Mayor passed a motion to decide this issue, the denial of the Benefits–Plaintiff's alleged injury–resulted from official policy. The Court must now determine whether the official policy violated Plaintiff's Due Process and First Amendment rights.

**2.    Procedural Due Process Claim**

    **a.    Plaintiff Does Not Have a Constitutionally Protected Property Interest in Receiving Health Insurance Benefits After Leaving Office in November 2008**

        **i.    Regardless of Whether the Handbook is an Express Contract, Neither the Handbook or Resolution 2008-13 Created a Constitutionally Protected Property Interest**

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights–life, liberty, and property–cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). To prevail on a procedural due process claim, the plaintiff must show (1) that he was deprived of a property or liberty interest; and (2) that the deprivation occurred without due process of law. *See* Zinermon v. Burch, 494 U.S. 113, 125 (1990). As the Court of Appeals for the Sixth Circuit has explained, this

involves a two-step inquiry: "First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourtenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process." Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001) (citations omitted).

As the Supreme Court has stated, property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an *independent source such as state law*- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (emphasis added). While the Due Process Clause dictates what process is due before a right may be deprived, the actual property interest is created by independent sources. *See* id. The two most common sources are state law and contracts. *See* id. To establish a protected interest, Plaintiff "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment," or in the present case, benefits. Bailey v. Floyd Cnty. Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997). Plaintiff argues that he is entitled to the Benefits based upon: (1) the Handbook; (2) Resolution 2008-13, which amended the Handbook; and (3) the "past practice" of city employees, including himself, who received health insurance benefits after leaving office. [Plaintiff's Complaint, Doc. 1, Pg. 6, ¶ 1.]. The Court will address each in turn.

First, Plaintiff argues that the Handbook is an express contract, and therefore created a protected property interest in the Benefits. Section V, Paragraph Q of the Handbook provides health insurance benefits to retiring employees until they are eligible for Medicare. [Handbook, Doc. 12, Pg. 69, § V, ¶ Q]. Plaintiff argues that based upon this provision, along with Resolution 2008-13

(which amended Section V, Paragraph Q of the Handbook), he has a constitutionally protected property interest in the Benefits:

> Upon his retirement, Mr. Jennings was vested with full rights as a City employee, including pension and health benefits. These benefits were to be paid for by the City until Mr. Jennings was eligible for Medicare. This entitlement was allotted to Mr. Jennings on account of Resolution No. 2008-13 . . . which was enacted by the City on August 5, 2008. . . . Mr. Jennings qualified for benefits under that Resolution because he met the age and service requirements and was retiring under the Tennessee Consolidated Retirement Plan.

[Plaintiff's Response in Opposition to the City's Motion for Summary Judgment, Doc. 22, Pg. 3].

Plaintiff's argument fails for two reasons. First, the Handbook is not an express contract. This is made abundantly clear by the Handbook's repeated warnings that it is not a contract. [*See* Handbook, Doc. 12, Pgs. 9, 99]. In addition, while serving as mayor, Plaintiff described the Handbook as a policy manual, not a contract. [*See* Introductory Statement to Handbook by Mayor Cliff Jennings, Doc. 12, Pg. 36]. It's disingenuous for Plaintiff to argue now–in the face of litigation–that the Handbook is an express contract.

Second, even assuming that the Handbook is an express contract, Plaintiff is exempted from its application. While the Handbook applies to most City employees, it does not apply to certain individuals. Section I, Paragraph C of the Handbook (titled "General Provisions") states that "these rules and regulations [the Handbook] shall cover all employees in the City of LaFollette service, *unless specifically exempted by this document*, the City Charter and/or the Ordinances of the City of LaFollette . . ." [Handbook, Doc. 12, Pg. 46, § I, ¶ C] [emphasis added]. As an "elected official," Plaintiff is exempted from the Handbook. [Id.]. Furthermore, the "Definitions" section of the Handbook defines "exempt service" as including the "elected position[] of Mayor." [Id., Pg. 102, § IX].

In any event, it is not important for the Court to decide whether the Handbook constitutes an express contract. Under one result, the Handbook would not apply because it is not an express contract. Under the other result, the Handbook would not apply because Plaintiff is exempted. Under both approaches, the result is the same: the Handbook does not create a protected property interest.

Plaintiff's reliance upon Resolution 2008-13 is misplaced for the same reasons. If the Court decided that the Handbook is not an express contract, then Resolution 2008-13–which amended Section V, Paragraph Q of the Handbook–would not affect Plaintiff's rights. Alternatively, if the Handbook is an express contract, Resolution 2008-13 would not apply because Plaintiff is exempted. While Resolution 2008-13 amended the Handbook, it did not modify the exempted categories.

On a side note, the Court notes that while the parties dispute whether a resolution can amend an ordinance, [*see* City's Reply in Support of its Motion for Summary Judgment, Doc. 30, Pgs. 5-6] the Court does not have to reach that question. As previously stated, even if Resolution 2008-13 amended the Handbook (which was adopted through an ordinance), the Handbook does not apply to Plaintiff.

### ii. Plaintiff Has Failed to Provide Sufficient Evidence that an "Implied Contract" or "Past Practice" Created a Constitutionally Protected Property Interest

In Perry v. Sindermann, the Supreme Court held that property interests may be created by "mutually explicit understandings that support [a] claim of entitlement to the benefit . . ." 408 U.S. 593, 601 (1972). As one court explained, "the premise of Sindermann is that where no codified statute creates property rights, *unwritten agreements may do so*." Heck v. City of Freeport, 985 F.2d 305, 311 (7th Cir. 1993) (emphasis added). In Ramsey v. Bd. of Educ., the Court of Appeals for the Sixth Circuit recognized that "constitutionally protected property interests can be created by either

13

*explicit or implied* contractual terms." 844 F.2d 1268, 1271 (6th Cir. 1988) (emphasis added). *See also* <u>Bauss v. Plymouth Twp.</u>, 233 F. App'x 490, 497 (6th Cir. 2007) (recognizing that "property interests may be created in some situations despite the absence of explicit contractual or legal provisions establishing a claim of entitlement") (citing <u>Sindermann</u>, 408 U.S. at 601-02).

The ultimate inquiry is whether the parties had "mutually explicit understandings" that created a property interest. <u>Sindermann</u>, 408 U.S. at 601. *See also* <u>McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.</u>, 440 F.3d 320, 331 (6th Cir. 2006) (recognizing that "the ultimate inquiry is the *mutual nature of the relationship*") (emphasis added) (citation and quotation omitted). To decide this issue, the Court must examine the City's "words or conduct in light of the surrounding circumstances." <u>Sindermann</u>, 408 U.S. at 602. As the Tennessee Court of Appeals has explained, "[t]he primary difference between an express contract and a contract implied in fact is the manner in which the parties manifest their assent. In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." <u>River Park Hosp., Inc. v. BlueCross Blueshield of Tenn., Inc.</u>, 173 S.W.3d 43, 57 (Tenn. Ct. App. 2002) (citations omitted). Accordingly, Plaintiff must show that the City Council engaged in words or conduct that created an implicit obligation to pay health insurance benefits upon leaving office.

To be clear, the question is not whether Plaintiff has a protected property interest in his continued employment as mayor.[6] While Plaintiff alleges that "[t]he principle that a worker has a

---

[6] The Supreme Court has expressly held that elected officials do not have a constitutionally protected property interest in their elected position. In <u>Taylor & Marshall v. Beckham</u>, 178 U.S. 548, 577 (1900), the governor of Kentucky claimed that he was deprived of property–his elected office–without due process of law. The Supreme Court rejected the governor's argument, holding that "[t]he decisions

14

property right in his employment is a settled matter under Tennessee law," [Plaintiff's Response in Opposition to the City's Motion for Summary Judgment, Doc. 22, Pg. 18], that is not the issue before the Court. The issue is whether Plaintiff has a protected property interest in receiving health insurance benefits after leaving office. Plaintiff conflates "continued employment" with "employment benefits," which are two distinct interests.[7] Plaintiff did not have a property interest in continued employment; he was an elected official. *See, e.g.*, Snowden v. Hughes, 321 U.S. 1, 7 (1944). Plaintiff's attempt to broaden the type of alleged property interest is without merit.

Plaintiff argues that the Handbook and Resolution 2008-13, along with other circumstances, created a protected property interest in the Benefits. [*See* Plaintiff's Response to the City's Motion for Summary Judgment, Doc. 22, Pg. 20]. In particular, Plaintiff alleges that "[r]egardless of the language in the Handbook, the effect of past practices, when coupled with the enactment of the 2008 Resolution, is to indicate that, in actual fact, the City did intend to be bound." [Id.]. To hold the

---

are numerous to the effect that public offices are mere agencies or trusts, and not property as such . . . [G]enerally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." Id. at 578. In conclusion, the Court held that the governor was "denied no right secured by the 14th amendment." Id.

In Snowde v. Hughes, 321 U.S. 1 (1944). the Supreme Court reaffirmed Taylor's holding. In particular, the Court held that "[m]ore than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property . . . secured by the due process clause. Only once since this Court had occasion to consider the question and it then reaffirmed that conclusion . . . as we reaffirm it now." Id. at 7 (citations omitted). *See also* Burks v. Perk, 470 F.2d. 163, 165 (6th Cir. 1972) (*per curiam*) (recognizing that "[p]ublic office is not property within the meaning of the Fourteenth Amendment") (citation omitted), *cert. denied*, 412 U.S. 905 (1973).

[7] In Larsen v. Senate of Pa., the court properly distinguished between an elected official's property interest in his position, and the property interest in benefits associated with the position. 154 F.3d 82, 92, n. 14 (3d Cir. 1998). "Appellants contend that since the Pennsylvania Supreme Court has held that elected public officials have no constitutionally protected property interest in their elected public office . . . it was reasonable for them to infer that there was no constitutionally protected right to the benefits associated with that public office. We disagree. A holding than an elected official does not have a property right in his office is completely distinguishable from the situation at hand which involves deferred compensation for services rendered [in that elected office]." Id.

City liable, Plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefits and *limits the discretion of the City to rescind the benefit*." Med. Corp., Inc. v. City of Lima, 296 F.3d 404, 409 (6th Cir. 2002) (emphasis added). Having reviewed the record, the Court finds that Plaintiff failed to provide sufficient evidence of an implied contract. Notably, Plaintiff has failed to show that the City was limited in its discretion. The Court of Appeals for the Sixth Circuit has repeatedly held that "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." Id. at 409-410. *See also* Richardson v. Twp. of Brady, 218 F.3d 508, 517 (6th Cir. 2000) (recognizing that a plaintiff "can have no legitimate claim of entitlement to a discretionary decision"). In order to have a constitutionally protected property interest, the interest must be based upon "mutually explicit understandings." Sindermann, 408 U.S. at 601. That expectation cannot be "mutual" (and therefore legitimate) if the City has full discretion to deny the Benefits. Med. Corp., 290 F.3d at 409-10. The following case is instructive.

In Golden v. Town of Collierville, the plaintiff, a fire fighter, filed a § 1983 action against the town. 167 F. App'x 474 (6th Cir. 2006). Ten applicants submitted applications for three positions in the fire department. Id. at 475. The plaintiff scored the fourth highest overall. Id. After receiving his score, the plaintiff met with the Fire Chief to discuss his application. Id. The Fire Chief told the plaintiff that "even though he had finished fourth in the testing and interview process," he would recommend the plaintiff for a promotion. Id. The plaintiff argued that this conversation "unequivocally told him that [the Fire Chief] was promoting [the plaintiff] to the third lieutenant position, effective the following month." Id. Ultimately, the plaintiff was not promoted to the position. Id. at 477.

Among his claims, the plaintiff argued that he had a constitutionally protected property interest in receiving the promotion. Id. at 478. The Court of Appeals for the Sixth Circuit rejected the plaintiff's argument, emphasizing that the town had full discretion to deny the promotion. Id. As the court stated, "[i]n order to assert a property interest in receiving a promotion, [the plaintiff] 'must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [Town] to rescind the benefit.'" Id. (quoting Med. Corp., 296 F.3d at 410). There was nothing in the words or conduct by the Fire Chief, or any other town officers, that limited the town's discretion to deny the promotion. Id. At most, the conversation with the Fire Chief established a unilateral expectation. Id. As the court stated, the plaintiff did not provide "any evidence that the terms of that conversation limited the defendants' discretion to rescind the promotion." Id. Accordingly, the Court held that the plaintiff did not have a constitutionally protected property interest in receiving the promotion. Id.

Like the town in Golden, the City has full discretion to deny the Benefits. While Plaintiff relies upon the City's alleged "past practice" of awarding health insurance benefits to former elected officials, Plaintiff has not provided sufficient evidence. Plaintiff asserts conclusory allegations rather than providing specific examples:

> As we have seen, Mr. Jennings and indeed other elected officials plus the City Attorney were given health care benefits both before and after the promulgation of the Handbook. Thus, even if, arguendo only, the fact remains that the City granted them nonetheless–and not only to Mr. Jennings but to other elected and appointed officials as well.

[Plaintiff's Response in Opposition to the City's Motion for Summary Judgment, Doc. 22, Pg. 13]. While Plaintiff alleges that "a number of City employees, including elected officials both present and retired receive health benefits from the City," [Plaintiff's Affidavit, Doc. 22-1, Pg. 4] Plaintiff

does not provide specific examples. The affidavit of David Young, City Administrator, also provides little assistance. [Doc. 22-2, Pg.3]. Mr. Young, like the Plaintiff, does not provide detailed examples of the City awarding health insurance benefits to former elected officials. [Id.].

Plaintiff's conclusory allegations are not sufficient to withstand a motion for summary judgment. Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that when an affidavit is used to oppose a motion for summary judgment, it must "set out facts" to demonstrate a genuine issue of material fact. Fed. R. Civ. P. 56(c)(4). After the City demonstrated an absence of genuine issue of material fact regarding the existence of an implied contract–based upon the City Charter, Handbook, Resolution 2008-18, and other documents–the burden shifted to Plaintiff to provide evidence raising a genuine issue of material fact. *See* Celotex, 477 U.S. at 324. While Plaintiff responded with affidavits, they did not set out detailed facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(4). The conclusory allegations in Plaintiff's affidavit [Doc. 22-1, Pg. 4] and Mr. Young's affidavit [Doc. 22-2, Pg.3] are insufficient to satisfy Plaintiff's burden.

Plaintiff also relies upon the fact that he received health insurance benefits during December 2008. This fact, however, did not create a protected property interest in receiving the Benefits. As the Court of Appeals has stated, mere reliance does not create a protected property interest. *See* Med Corp., 296 F.3d at 411 ("In the absence of some enforceable legal entitlement to continued participation . . . 'mere reliance' is insufficient to establish a property interest") (citing Bannum, Inc. v. Town of Ashland, 922 F.2d 197, 200 (4th Cir. 1990) ("[N]othing in the record suggests that Ashland could not have unilaterally withdrawn the approval at any time. Certainly, mere reliance on the approval did not elevate Bannum's interest in it to an entitlement.")). Even though the City awarded Plaintiff health insurance benefits during December 2008, nothing prevented the City from

18

rescinding those benefits in the future. Notably, Plaintiff failed to provide evidence that the City promised him (orally or in writing) continued benefits. *See* Baker v. Ky. State Univ., 45 F. App'x 328, 331 (6th Cir. 2002) (dismissing a § 1983 claim based upon the deprivation of a property interest–in that case, continued employment–when the plaintiff "failed to introduce evidence of an oral representation by the University that the University would decline to reappoint him only for good cause"). When a plaintiff asserts that he has a constitutionally protected property interest based upon an implied contract, the plaintiff must show that "the parties specifically manifest[ed] their intention" to be bound. Bailey, 106 F.3d at 141. Obviously, the City cannot be bound when it retains full discretion to rescind the Benefits. As the Court of Appeals for the Sixth Circuit has stated, "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." Med Corp., 296 F.3d at 410 (citing Roth, 408 U.S. at 577). What were the terms of the alleged contract? How long was Plaintiff supposed to receive the Benefits? How much was he supposed to receive? When were the benefits to be administered?

In addition to the vagueness surrounding the alleged contract, Plaintiff only received the Benefits for one month. Plaintiff left office in November 2008, received health insurance benefits during December 2008, and had those benefits terminated in January 2008. This is simply not enough time to establish a "pattern" or "practice" of receiving the Benefits. In Larsen v. City of Beloit, the Court of Appeals for the Seventh Circuit held that a plaintiff did not have a constitutionally protected property interest in the prepayment of medical bills, even though the city had provided benefits for eleven years. 130 F.3d 1278, 1285 (7th Cir. 1997). This was because the terms of the alleged contract were too vague. Id. In Larsen, the plaintiff, an injured police officer,

filed a § 1983 action against the city based upon a procedural due process claim. Id. at 1280. In 1985, the city council passed a resolution that provided "the City would advance funds to pay the Larsens' bills for home care nursing and other medical expenses and then submit the bills to Home Insurance for reimbursement." Id. From 1986 until 1996, the city paid most of the bills that were directly submitted to it. Id. During this period, the plaintiff's wife also submitted bills to Home Insurance. Id. In 1996, the city council passed a resolution "instructing the Larsens to submit all claims directly to Home Insurance and ordering City officials not to pay any more bills for Officer Larsen's medical care." Id. at 1281.

In response, the plaintiff filed a § 1983 action against the city, arguing that he had been deprived of a constitutionally protected property interest in the prepayment of his medical bills. Id. In support of his § 1983 action, the plaintiff argued that the "past practice" of receiving prepayments created a protected property interest. Id. at 1285. The court rejected this argument, finding that the "past practice" was insufficient to create a protected property interest. Id. In particular, the court held that the arrangement was too informal, and the terms too vague, to constitute an implied contract:

> Still further, the alleged contract, if it existed at all, would be extremely vague in terms. Did the City undertake to pay [the plaintiff's] medical bills until he either recovered or died? Or was the agreement terminable at will? . . . In any event, the vagueness of the alleged agreement causes the Larsens' argument to collapse back upon the refrain of 'course of conduct': if the terms are to have any certainty, it must come from the parties' actual practice over the years the agreement was supposedly being observed.
>
> In this regard, it appears that [the plaintiff's wife] herself did not always utilize the City's prepayment procedure. Over the course of the eleven years from 1985 to 1996 she submitted a number of medical bills directly to [a provider other than the city]. She also initiated petitions against Home Insurance before the Worker's

Compensation Division, rather than leaving the City to pursue reimbursement for the amounts allegedly due. These actions suggest that the custom between the parties was an informal arrangement by which Mrs. Larsen could either pursue a given payment herself or refer it to the City for action, depending upon convenience, the family's cash flow at the moment, or any other factors she wished to consider.

All of this is not to suggest that in order for the parties' practice over the eleven years to have given rise to a protected property interest Mrs. Larsen would have had to refer every single medical bill, no matter how small, to the City for prepayment. Given the absence of any other source to define the parties' obligations under the alleged agreement, however, Mrs. Larsen's somewhat haphazard reliance on the City's offer to advance funds does not do much to dispel the impenetrable aura of vagueness that surrounds the supposed contract.

In these circumstances, the parties' course of conduct is insufficient to establish a protected property right in the prepayment of medical bills. The Larsens offer no solid evidence of an explicit agreement that would make the eleven years of prepayment by the City look like anything more than an admirable effort to take care of a fallen police officer. The City's subsequent decision to stop taking care of Officer Larsen in that way does not implicate rights protected by the Constitution, and summary judgment was therefore appropriate on the § 1983 claim.

Id. In the present case, Plaintiff only received the Benefits for one month, substantially less than the eleven years in Larsen. In addition, the terms of the alleged contract are even more vague. In Larsen, the city council passed a resolution that promised to pay for Mr. Larsen's medical bills. In the present case, Plaintiff has failed to show that the City promised him–orally or in writing–that it would provide health insurance benefits after he left office. Plaintiff has failed to provide any evidence about the terms of the alleged contract. See Med. Corp., 296 F.3d at 411 (dismissing a § 1983 action based upon an alleged procedural due process violation because "[t]here is no evidence in the record, for example, that would support a claim that an implied contract was created or that would define what the terms of such a contract might have been"). How long was Plaintiff supposed

to receive the Benefits?  At what rate?  And when?

In sum, the Court finds that the City had full discretion to rescind the Benefits.  Because the City was not limited in its discretion, Plaintiff did not have a "legitimate" expectation in receiving the Benefits.  *See* id. (holding that "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it") (citation omitted).  Consequently, Plaintiff does not have a constitutionally protected property interest in receiving the Benefits.  As the Supreme Court has clearly stated, a plaintiff asserting a procedural due process claim must have "more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Roth, 408 U.S. at 577.  Accordingly, because Plaintiff has not identified a cognizable property interest, his § 1983 claim based upon an alleged procedural due process violation is **DISMISSED**.

### 3.      First Amendment Claim: Free Speech and Political Association

To establish a prima facie case of First Amendment retaliation, the plaintiff must show that: "(1) he was engaged in constitutionally protected speech, (2) he was subjected to an adverse action or was deprived of some benefit and (3) the protected speech was a substantial or motivating factor in the adverse action."  Garner v. City of Cuyahoga Falls, 311 F. App'x 896, 901 (6th Cir. 2009) (citing Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003)).  If the plaintiff establishes a prima facie case, then the burden shifts to the employer.  Kelly v. Warren Cnty. of Commr's., 2010 WL 3724599, at *3 (6th Cir. Sept. 14, 2010).  At that point, the employer can defeat the plaintiff's claim by "showing either that, under the balancing test established by Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968), or that under the mixed-motive analysis established by Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977), it would have rescinded [the

benefits] even absent his protected conduct."  Kelly, 2010 WL 3724599, at *3.  As the Court of

Appeals for the Sixth Circuit has stated, "[t]he right of political association is a well established right

under the First Amendment for 'political belief and association constitute the core of those activities

protected by the First Amendment.'"  Sowards v. Loudon Cnty., 203 F.3d 426, 423 (6th Cir. 2000)

(quoting Rutan v. Republican Party of Illinois, 497 U.S. 62, 69 (1990)).  Plaintiff's free speech claim

and political association claim are subject to the same test.  See Garner, 311 F. App'x at 901.

First, Plaintiff must show that his speech was protected by the First Amendment.  This means

that Plaintiff must show that his speech addressed a matter of "public concern."  See Pickering, 391

U.S. at 568; Connick v. Myers, 461 U.S. 138, 146 (1983) (recognizing that the First Amendment

only protects speech that "fairly [may be] considered as relating to issues of political, social, or other

concern to the community"); Miller v. City of Canton, 319 F. App'x 411, 416 (6th Cir. 2009) ("Our

analysis of whether a public employee's speech is protected begins with the 'threshold' question

whether the speech involves a matter of public concern.") (citing Scarbrough v. Morgan Cnty. Bd.

of Educ., 470 F.3d 250, 255 (6th Cir. 2006)); Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)

(recognizing that the first inquiry "requires determining whether the employee spoke as a citizen on

a matter of public concern").  Whether speech "addresses a matter of public concern" is a question

of law.  See, e.g., Fitzpatrick v. City of Frankfort, 305 F. App'x 258, 262 (6th Cir. 2008) (citations

omitted).  The Court must examine the "*content, form, and context of a given statement*, as revealed

by the whole record."  Connick, 461 U.S. at 147 (emphasis added).  Plaintiff's claim fails because

he does not explain: (1) the content of his speech; (2) when it was delivered; (3) where it was

delivered; and (4) to whom.  Instead of providing evidence about the content of his speech, Plaintiff

asserts conclusory allegations:

> The fact is that it is this constitutional deprivation that constitutes the heart of the case. Mr. Jennings was receiving his benefits with no question as to their appropriateness. Then, the political winds changed, Mr. Jennings was defeated for reelection and in retaliation the City took special, individualized measures to cancel his health benefits. It was not enough, in other words, for Mr. Jennings to be tossed out of office. The City, under its new leadership, took that extra, mean-spirited step of passing a resolution on January 6, 2009 to strip the former mayor of his health care benefits. The action was political and thus clearly unconstitutional.

[Plaintiff's Response to the City's Motion for Summary Judgment, Doc. 22, Pgs. 9-10]. None of these allegations have anything to do with Plaintiff's political speech. Not once does Plaintiff describe the content of his speech.

Recently, the Supreme Court added an additional requirement to First Amendment retaliation claims: the "pursuant to" requirement. In <u>Garcetti</u>, the Supreme Court held that the First Amendment protects employee speech only if is made in their personal capacity. <u>Garcetti</u>, 547 U.S. at 421. If speech is made "pursuant to" their official duties, that makes "the relevant speaker the government entity, not the individual." <u>Evans-Marshall v. Bd. of Educ.</u>, 624 F.3d 322, 338 (6th Cir. 2010) (citing <u>Garcetti</u>, 547 U.S. at 421). As the Supreme Court held, "when employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, 547 U.S. at 421. Because Plaintiff does not identify when, where, and to whom his speech was made, it is unclear whether Plaintiff's speech was made in his personal capacity or "pursuant to" his official duties. Without these details, Plaintiff has failed to show that his speech was protected by the First Amendment.

Recently, the Court of Appeals for the Sixth Circuit held that speech made during the course of one's campaign is protected by the First Amendment. <u>Murphy v. Cockrell</u>, 505 F.3d 446, 452

(6th Cir. 2007). In <u>Murphy</u>, the plaintiff campaigned for the position of Montgomery County Property Valuation Administrator, while she was employed in that office. <u>Id</u>. at 448-49. Plaintiff lost the election, and days later was fired from her position. <u>Id</u>. at 449. It was undisputed that the plaintiff was fired for her political speech made during the course of her campaign. <u>Id</u>. at 450.

After being fired, the plaintiff filed a §1983 action against the Montgomery County PVA who fired her (the same person who beat her in the election). <u>Id</u>. As a basis for her § 1983 action, the plaintiff alleged that her First Amendment rights to free speech and political association were violated. <u>Id</u>. The district court dismissed Plaintiff's § 1983 claims, finding that she did not engage in protected speech. <u>Id</u>. When the case reached the Court of Appeals, the court framed the issue as "whether the First Amendment protects a public employee from termination based on that employee's political expressions during her own candidacy." <u>Id</u>. at 450-51. The Court of Appeals reversed the district court, holding that the plaintiff's speech "during the course of her campaign is protected under the First Amendment . . ." <u>Id</u>. at 452.

As the court explained in <u>Murphy</u>, "[the plaintiff's] speech during the course of her campaign 'will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." <u>Id</u>. (quoting <u>Scarbrough</u>, 470 F.3d at 257-58). Unlike <u>Murphy</u>, Plaintiff has provided no details about the content of his speech, when it was made, where it was made, and to whom. Instead, Plaintiff asserts that the Benefits were terminated based upon personal dislike:

> In his affidavit, Mr. Jennings explains the details of that political retaliation. It is long standing and may spring from the fact that Mr. Jennings as Mayor demoted current-Mayor Stanfield on account of alleged misconduct on the job. At the same time, this ill-will is not merely personal; it is political as well. For that reason, it is clear that the cancellation of the health care benefits was the product of

25

> retaliation for Mr. Jennings' right to associate with others and to express his political views. It is clear that such actions do in fact violate the rights of the political official so treated. At the very least, a genuine dispute of material fact on the issue precludes summary judgment.

[Plaintiff's Response to the City's Motion for Summary Judgment, Doc. 22, Pg. 10]. Mere dislike, or political opposition, does not violate the First Amendment. At the heart of each First Amendment claim is speech. Where is the speech in this case? What did Plaintiff say? When did he say it? And to whom? Context matters, and Plaintiff has fallen short in that regard. Without sufficient information about the context of his speech, Plaintiff did not establish a prima facie case of First Amendment retaliation. Accordingly, Plaintiff's § 1983 claim based upon First Amendment violations is **DISMISSED**.

### B.      Plaintiff's State Law Claims

In addition to his federal claims, Plaintiff has filed state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that "[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well." Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009) (quoting Wojnicz v. Davis, 80 F. App'x 382, 384-85 (6th Cir. 2003)).

The Court only has original jurisdiction over Plaintiff's federal claims. Because the Court dismissed Plaintiff's federal claims prior to trial, the Court declines to exercise supplemental jurisdiction over his state law claims. Accordingly, plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

## IV.      CONCLUSION

Based on the foregoing, the City's Motion for Summary Judgment [Doc. 11] is **GRANTED**, whereby Plaintiff's federal claims are **DISMISSED WITH PREJUDICE** and his state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge